IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| SANTOS ANGEL CHAVEZ,<br><br>Plaintiff,<br><br>vs.<br><br>KELLY COMPTON, GEORGE ZORZAKIS, CHUCK MAXWELL, DENNIS MCCAVE, KATE KYDLAND, TARA COOPER, and DR. GEORGE SHECKLETON, in their professional and individual capacities,<br><br>Defendants. | Cause No. CV 08-028-BLG-RFC-CSO<br><br><br><br>ORDER RE: PENDING MOTIONS<br>AND<br>FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

This action is based on allegations of excessive use of force and denial of medical care.  On May 8, 2009, Defendants filed motions for summary judgment.[1]  After several extensions (due to changes in where he was  incarcerated), Chavez responded to Defendants' Motions. (Court Docs. 67, 68, 71, 72 and 81).  Chavez also filed a Motion for an

---

[1]Court Docs. 50, 55.  Defendants provided Chavez with a Notice and Warning to pro se litigants pursuant to Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998).  (Court Docs. 54, 58).

Order to Compel Witness Affidavits (Court Doc. 82), a Motion to

Compel the Production of Evidence (Court Doc. 83), and a Second

Motion for Order Granting Special Custody of Discovery Materials

(Court Doc. 84).

The parties' motions are fully briefed and ready for resolution.

## I.  CHAVEZ'S MOTIONS

Liberally construed, Chavez's motions could be considered

requests under Rule 56 of the Federal Rules of Civil Procedure to allow

further discovery.  Fed.R.Civ.P. 56(f) provides,

> If a party opposing the [summary judgment] motion shows
> by affidavit that, for specified reasons, it cannot present
> facts essential to justify its opposition, the court may:  1)
> deny the motion; 2) order a continuance to enable affidavits
> to be obtained, depositions to be taken, or other discovery to
> be undertaken; or 3) issue any other just order.

Fed.R.Civ.P. 56(f).

"To prevail under this Rule, parties opposing a motion for

summary judgment must make '(a) a timely application which (b)

specifically identifies (c) relevant information, (d) where there is some

basis for believing that the information sought actually exists.'"

Employers Teamsters Local Nos. 175 and 505 Pension Trust Fund v.

ORDER RE:  PENDING MOTIONS AND FINDINGS AND RECOMMENDATION OF UNITED
STATES MAGISTRATE JUDGE – CV 08-0028-BLG-RFC-CSO / PAGE 2

Clorox Co., 353 F.3d 1125, 1129-30 (9th Cir. 2004) (quoting VISA Int'l Serv. Ass'n v. Bankcard Holders of Am., 784 F.2d 1472, 1475 (9th Cir. 1986)).  "The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment."  Chance v. Pac-Tel Teletrac Inc., 242 F.3d 1151, 1161 n. 6 (9th Cir. 2001).

Chavez's Motions are untimely and, as set forth below, do not proffer sufficient facts to show that the evidence sought exists.

A.   Motion to Compel Witness Affidavits (Court Doc. 82)

Chavez asks the Court to issue an Order/subpoena to be sent to five civilian witnesses who allegedly observed the incident at the Town House Motel on the morning of June 23, 2007.  In support, Chavez attaches a February 16, 2008, letter from one of these witnesses stating the witness would be willing to help.

It is not the role of the Court to assist litigants, even those proceeding pro se, in the pursuit of discovery.  While Chavez could have utilized the Court's compulsory process to have these witnesses appear for a deposition, he would have had to do so during the discovery

process which closed on April 6, 2009.  Chavez provides no explanation why he did not seek to depose or subpoena these witnesses during discovery.  Accordingly, this motion will be denied.

> B.  Motion to Compel (Court Doc. 83)

Discovery ended on April 6, 2009, and substantive motions were due May 8, 2009.  Chavez waited until August 28, 2009, to file a motion to compel discovery, and filed it only after the Defendants filed motions for summary judgment.  A trial court has broad discretion regarding pre-trial matters such as discovery.  United States v. Kitsap Physicians Service, 314 F.3d 995 (9th Cir. 2002).  The Court concludes that Chavez's motion should be denied because it is untimely.

Chavez's motion also fails to comply with Local Rule 26.3(c) which governs discovery motions.  He did not set forth, in full, the text of the discovery originally sought, the response made, or the basis for the motion.  While Chavez represents he is in "dire need" of the evidence requested, he does not explain why he needs each piece of evidence, how this evidence is relevant, or why the Defendants' objections should be overruled.

Chavez seeks to compel the production of additional dash camera videos from two other officers' vehicles.  Defendants represented that Chavez has been provided with all DVDs in the Billings Police Department's possession.  Chavez has produced no evidence to dispute this representation.  Although there is a report from an investigator which states there may have been a video in Officer Wichman's vehicle, it does not definitively state that such a video exists.

From the County, Chavez seeks to compel camera footage of the booking area; the hallway video and courtroom video the day of Chavez's first court date; the hallway video during the time Chavez received his first visit from Tara Aragon; and Chavez's recorded telephone conversations which he made the first week of his incarceration.  (Court Doc. 69-1: County's Reply, attachment 1: Chavez's discovery requests pp. 5-6).[2]  Defendants objected to these requests on the grounds that the requests were overly broad, unduly burdensome, and not calculated to lead to the discovery of relevant

---

[2]Page references are to the numbers assigned by the Court's CM/ECF system, unless otherwise noted.

information.  Chavez made no showing as to the relevancy of this evidence.  Accordingly, this request will be denied.

Chavez also requested the names of everyone who worked at the Yellowstone County Detention Facility (YCDF") between June 2007 and April 2008, all job disciplinary activity involving the five County Defendants, all documentation of criminal or civil charges lodged against the County Defendants, and his clothing from the date of his arrest.  As with the video evidence, Chavez has made no showing as to the relevancy of this information.  The Motion to Compel will be denied.

C.  Motion to Grant Special Custody of Discovery Materials

Chavez filed his original Motion for an Order Granting Special Custody of Discovery Materials on May 4, 2009.  (Court Doc. 49).  Chavez was seeking special permission to view the DVD videos of his arrest at the Montana State Prison.  The Court directed Chavez to communicate with prison officials to determine what accommodations could be made to facilitate Chavez's request to access the DVDs and CDs and denied the motion without prejudice.  (Court Doc. 78).  Chavez filed his second motion on August 28, 2009 (the date his response to the

motions for summary judgment was due) indicating he could not view this evidence without a court order.  (Court Doc. 84).  Chavez did not indicate what steps he had taken to communicate with prison officials.

Regardless, as set forth in more detail below, the Court has thoroughly reviewed the videos produced by Defendants and determined they do not help to establish Chavez's claims.  In fact, the videos disprove Chavez's allegations.  The motion will be denied as moot.

## II. MOTIONS FOR SUMMARY JUDGMENT

### A.  Legal Standards

Parties are entitled to summary judgment if they can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  That is, where the documentary evidence permits only one conclusion.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis of its motion and identifying those

portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, it believes demonstrate the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248. The non-moving party may do this by use of affidavits (including his own), depositions, answers to interrogatories, and admissions. Id. Only disputes over facts that might affect the outcome of the suit under the governing law are "material" and will properly preclude entry of summary judgment. Id.

At the summary judgment stage, the judge's function is not to weigh the evidence or determine the truth of the matter, but to determine whether there is a genuine issue for trial. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249-50.

The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party].  The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

Anderson, 477 U.S. at 252.

In civil rights cases and in the context of a motion for summary judgment where a litigant is proceeding pro se, the court has an obligation to construe pro se documents liberally and to afford the pro se litigant the benefit of any doubt.  Erickson v. Pardus, 551 U.S. 89, 127 S.Ct 2197, 2200 (2007) (per curiam); Baker v. McNeil Island Corrections Ctr., 859 F.2d 124, 127 (9th Cir. 1988).

B.    Parties

Chavez is a pro se litigant currently incarcerated at the Montana State Prison in Deer Lodge, Montana.  The Defendants are Kelly Compton and George Zorzakis, police officers with the City of Billings Police Department; and Chuck Maxwell, Dennis McCave, Kate Kydland, Tara Cooper, and Dr. George Sheckleton with the YCDF.[3]

---

[3]Sheriff Chuck Maxwell diedon June 26, 2009.  The Amended Complaint names the Defendants in their "professional and individual" capacity.  If there are claims

C.    Statement of Facts

On June 23, 2007, at approximately 5:30 a.m., Officer Kelly Compton was investigating a theft at a Walmart earlier that morning by an individual matching Chavez's description who was driving a stolen vehicle.  In the course of his investigation, Office Compton saw the same stolen vehicle at the Town House Motel in downtown Billings. (Court Doc. 52-1: Compton Affidavit, p. 4,  ¶ 17).  Officer Compton, who was wearing his police uniform, approached the motel and saw Chavez. Chavez made eye contact and then moved quickly toward the stolen vehicle.  (Court Doc. 52-1: Compton Affidavit, ¶¶ 19, 22).

Officer Compton ran toward Chavez, drew his weapon, and shouted at Chavez to stop and not to move.  (Court Doc. 52: Compton and Zorzakis's Statement of Undisputed Facts ("City SOF"), ¶ 19, citing Court Doc. 52-1: Compton Affidavit, ¶ 23).  Chavez entered the stolen vehicle and tried to shut the car door but Officer Compton opened the

---

against Sheriff Maxwell in his official capacity, there would be an automatic substitution of the Sheriff's successor pursuant to Fed.R.Civ.P. 25(d)(1).  But given the Court's recommendation to dismiss this matter and the "official capacity" claims not being clearly set out, it is unnecessary to effectuate such a substitution at this point in the proceedings.

door and told him to stop and get out. (Court Doc. 52:  City SOF, ¶¶ 20-21, citing Court Doc. 52-1: Compton Affidavit, ¶¶24-25).

Chavez started the motor and grabbed the shift lever to engage the transmission.  (Court Doc. 52:  City SOF, ¶ 22, citing Court Doc. 52-1: Compton Affidavit, ¶ 26).  Officer Compton attempted to push Chavez from the driver's seat to the passenger seat to gain control of Chavez.  (Court Doc. 52:  City SOF, ¶ 23, citing Court Doc. 52-1: Compton Affidavit, ¶ 27).  Chavez was holding the steering wheel and Officer Compton could not get him across the console.  (Court Doc. 52: City SOF, ¶ 24, citing Court Doc. 52-1: Compton Affidavit, ¶ 28).

While Officer Compton was partially inside the driver's compartment, Chavez shifted the car into "drive" and started to drive away.  (Court Doc. 52:  City SOF, ¶ 25, citing Court Doc. 52-1: Compton Affidavit, ¶ 29).  As Chavez began to accelerate, Compton hung onto the steering wheel.  (Court Doc. 52:  City SOF, ¶ 26, citing Court Doc. 52-1: Compton Affidavit, ¶ 30).  Officer Compton looked forward and realized the vehicle was accelerating toward a large concrete pillar.  (Court Doc. 52:  City SOF, ¶ 27, citing Court Doc. 52-1: Compton Affidavit, ¶ 31).

Officer Compton let go of the steering wheel and fell out of the car before he impacted with the concrete pillar.  (Court Doc. 52:  City SOF, ¶ 28, citing Court Doc. 52-1:  Compton Affidavit, ¶ 32).  Officer Compton landed on the ground and sustained abrasions on his left arm and both legs and injuries to his back and neck.  (Court Doc. 52:  City SOF, ¶ 29, citing Court Doc. 52-1: Compton Affidavit, ¶¶ 33-34).

Chavez left the parking lot and led police officers on a high speed chase throughout Billings.  Billings Police Officer George Zorzakis responded to the dispatch call for officer assistance.  (Court Doc. 52: City SOF, ¶ 32, citing Court Doc. 52-2:  Zorzakis Affidavit, ¶ 5).  Officer Zorzakis observed Chavez's vehicle traveling south on Bitterroot Avenue until it eventually collided with a guardrail and stopped. (Court Doc. 52: City SOF, ¶ 33, citing Court Doc. 52-2:  Zorzakis Affidavit, ¶ 6).  Chavez exited the vehicle and crawled under a bridge into an irrigation ditch.  (Court Doc. 52: City SOF, ¶ 35, citing Court Doc. 52-2:  Zorzakis Affidavit, ¶ 7).  Officer Zorzakis exited his vehicle and ran to the irrigation ditch where he saw Chavez in the water, coming out from a culvert under the roadway.  Zorzakis drew his

weapon and ordered Chavez out of the water.  (Court Doc. 52-2:
Zorzakis Affidavit, ¶ 8).  Zorzakis handcuffed Chavez and assisted him
from the irrigation ditch to the front of Zorzakis's patrol vehicle.  (Court
Doc. 52-2:  Zorzakis Affidavit, ¶¶ 9-10).

Chavez contends that his shirts were cut with a knife to allow
officers to view his tattoos, presumably to identify him.  Chavez cannot
identify the law enforcement officer who used a knife to cut his shirts.
He cannot describe or identify Defendant Officer George Zorzakis.
(Court Doc. 64-6: Chavez Depo. 56:1-57:14, 58:21-59:15).

Chavez was treated at the arrest scene by medical personnel with
American Medical Response ("AMR") and then transported by AMR
ambulance to St. Vincent's Hospital.  (Court Doc. 52:  City SOF, ¶¶ 46-
47, citing Court Doc. 52-2:  Zorzakis Affidavit, ¶ 23; Court Doc. 64-6:
Chavez Depo. 91:16 - 92:15).

Chavez was admitted to St. Vincent's Hospital at 6:48 a.m. on
June 23, 2007, and discharged at 9:38 a.m.  (Court Doc. 52:  City SOF,
¶48, citing Court Doc. 52-3, pp. 32-38: St. Vincent Healthcare Medical
Records).  Officer Zorzakis observed Chavez at the St. Vincent's

Hospital until 7:21 a.m. when he was relieved from his responsibilities by day shift officers. (Court Doc. 52: City SOF, ¶ 52, citing Court Doc. 52-2: Zorzakis Affidavit, ¶ 29).

At the hospital Chavez underwent a chest x-ray, blood tests, and a CT scan of his abdomen and pelvis. The medical records noted that Chavez complained of pain on his left side. (Court Doc. 52-3, p. 32: St. Vincent's Hospital medical records). Chavez was not prescribed any medication upon discharge from St. Vincent Healthcare but was instructed to arrange for a follow-up appointment with the Deering Clinic in 3-5 days or immediately if his symptoms got worse. (Court Doc. 56: County Facts citing Ex. 4, St. Vincent Healthcare Discharge Instructions, Bates Stamp 124; Ex. 6, Chavez Depo. 125:2-5).

After his release from the hospital, Chavez was transported to the YCDF where he was incarcerated from June 23, 2007, until April 11, 2008. (Court Doc. 56: County Facts citing Ex. 7, Request for Admission No. 8). Upon intake, Chavez reported having a history of seizures and alcohol use. He was prescribed 10 mg of Valium four times a day for two days for seizure prevention until further medical information could

be obtained.  (Court Doc. 56: County Facts citing Sheckleton Affidavit;
Ex. 1, YCDF Medical Report (Bates Stamp 126)).

On June 24, 2007, Chavez was seen at the jail regarding
complaints of back pain.  On June 26, 2007, Chavez discussed his
seizures with someone presumably from medical.  Chavez complained
again on June 29, 2007 about pain in his back and abdomen.  He was
prescribed 800 mg of Motrin "TID" (three times a day) on June 30,
2007.  (Court Doc. 64-1, p. 33–YCDF medical records; Court Doc. 64-8,
p. 10–Chavez's response to Request for Admission No. 23).

Chavez was referred to Mental Health on July 2, 2007, but on
August 3, 2007, he declined to see Mental Health.  On July 2, 2007,
Chavez presented a medical request asking to see a doctor about his car
crash injuries and that he was in pain.  Nurse practitioner Kate
Kydland responded on July 14, 2007, that Chavez appeared to be
moving about without any problems.  (Court Doc. 64-1, p. 22).  Nurse
Kydland testified by affidavit that at that time Chavez did not appear
to be suffering from a serious medical condition.  (Court Doc.
60–Kydland Affidavit, ¶ 5).

On September 23, 2007, Chavez threatened violence toward a nurse to the point she was uncomfortable opening his cell to determine if he was actually taking his Motrin.  Tara Cooper, a physician's assistant to Dr. George Sheckleton, discontinued Chavez's Motrin after the incident.  (Court Doc. 56: County Facts citing Sheckleton Affidavit; Ex. 1, YCDF Medical Report (Bates Stamp 190)).  After the discontinuation of the Motrin, Chavez still had access to over-the-counter pain medication and was given Tylenol. (Court Doc. 56: County Facts citing Kydland Affidavit; Ex. 1, YCDF Medical Request Forms (Bates Stamp No. 171); Ex. 6, Chavez Depo. p. 129:15-21).

Chavez's second medical request was dated October 1, 2007, and indicated his pain medications were stopped and he needed them. Nurse Kydland responded that his accident was almost four months ago, pain medications were not given over long period of time, and he could take over the counter pain medications.  (Court Doc. 64-1, p. 21).

On October 17, 2007, Chavez filed a medical request indicating he needed to see a doctor, the pain from his car accident had not subsided, and he was numb in portions of his body.  (Court Doc. 64-1, p. 20).  Dr.

Sheckleton, a doctor on contract with YCDF, saw Chavez on October 25, 2007. Dr. Sheckleton testified by affidavit that Chavez's complaints were vague and not consistent with a definite pattern of injury. He started Chavez on Neurontin, an anti-seizure medication often useful for anxiety, neuropathic pain, and sleep. Dr. Sheckleton increased the dose of the medication several days later at Chavez's request. (Court Doc. 56: County Facts citing Sheckleton Affidavit; Ex. 1, YCDF Medical Report (Bates Stamp 190)). Dr. Sheckleton added Vistaril, an atypical anti-histamine often useful for anxiety and pain relief, at Chavez's request on November 1, 2007. Chavez requested an increase in the Vistaril dose which was done on December 10, 2007. (Court Doc. 56: County Facts citing Court Doc. 63: Sheckleton Affidavit, ¶ 7; and Court Doc. 64-1: YCDF Medical Records, pp. 30-31 (Bates Stamp 188-189)).

On January 24, 2008, Chavez filed a medical request indicating he was experiencing sharp pains in his ribs and hip on the left side when he moved around. He indicated he was in pain and asked to see a doctor. Nurse Kydland responded on February 5, 2008 that Chavez had seen the doctor, he had been given medication for his pain, and there

was nothing stronger the doctor would order for pain.  (Court Doc. 64-1,

p. 18 (Bates Stamp 156)).

The Complaint in this matter was filed on February 12, 2008.

Although additional facts were provided by the parties regarding

Chavez's medical care after February 12, 2008, it would not have been

possible for Chavez to exhaust these claims prior to filing his lawsuit.[4]

Both Dr. Sheckleton and Defendants' expert, Dr. Peter B.

Mitchell, testified that Chavez never suffered from a serious or life-

threatening condition, and his medical needs were adequately

addressed by YCDF staff.  (Court Doc. 56: County Facts citing

Sheckleton Affidavit; Mitchell Affidavit).  Dr. Sheckleton opined that

"Chavez improved medically while at YCDF."  Court Doc. 63 at 6, ¶ 17

(Sheckleton Affidavit).

On January 18, 2008, Chavez pled guilty to felony criminal

---

[4]Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see also Woodford v. Ngo, 126 S.Ct. 2378 (2006).  Exhaustion must occur prior to filing suit. McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).

It is not entirely clear whether Chavez exhausted any of his claims.  All grievances produced by the parties are dated after the filing of the Complaint.  As this issue was not raised by Defendants in their motions it will not be addressed herein.

endangerment, felony theft, and felony criminal possession of dangerous drugs. (Court Doc. 52-6: <u>State of Montana vs. Santos Angel Chavez</u>, Cause No. DC 07-0556, 13th Judicial District Court, Yellowstone County, State of Montana Plea Agreement).

    D. <u>Allegations</u>

The Court has construed Chavez's Amended Complaint as raising the following claims: (1) excessive use of force by Compton at the hotel; (2) excessive use of force by Compton after Chavez's arrest; (3) excessive use of force by Zorzakis's alleged use of knife; (4) Fifth Amendment claim regarding the cutting of Chavez's shirts; (5) destruction of property claim regarding the cutting of Chavez's shirts; (6) denial of medical care by Zorzakis; and (7) denial of medical care while at the YCDF.[3]

    E. <u>Excessive Use of Force</u>

A claim that a law enforcement officer used excessive force in the course of an arrest or other seizure and while detained post-arrest but

---

[3]In his various responses, Chavez discusses a number of other allegations including complaints regarding his classification within the jail and an incident when his hand was injured at the jail. These allegations were not raised in the Amended Complaint and are not properly before this Court.

pre-arraignment is analyzed under the Fourth Amendment
reasonableness standard.  See Graham v. Connor, 490 U.S. 386, 394-95,
109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); Forrester v. City of San Diego,
25 F.3d 804, 806 (9th Cir. 1994), cert. denied, 513 U.S. 1152, 115 S.Ct.
1104, 130 L.Ed.2d 1070 (1995); Pierce v. Multnomah County, Oregon,
76 F.3d 1032, 1043 (9th Cir. 1996).  "Determining whether the force
used to effect a particular seizure is 'reasonable' under the Fourth
Amendment requires a careful balancing of 'the nature and quality of
the intrusion on the individual's Fourth Amendment interests' against
the countervailing governmental interests at stake."  See Graham, 490
U.S. at 396 (citations omitted).  Whether a law enforcement officer's
use of force was "objectively reasonable" depends upon the totality of
the facts and circumstances confronting him.  Smith v. City of Hemet,
394 F.3d 689, 701 (9th Cir.) (en banc) (quoting Graham, 490 U.S. at
397, 109 S.Ct. at 1872), cert. denied, 545 U.S. 1128, 125 S.Ct. 2938, 162
L.Ed.2d 866 (2005).

"The question is whether the officers' actions are 'objectively
reasonable' in light of the facts and circumstances confronting them,

without regard to their underlying intent or motivation." Graham, 490
U.S. at 397 (citation omitted).  Reasonableness must be assessed from
the perspective of a reasonable officer on the scene, rather than with
the 20/20 vision of hindsight, and must allow for the fact that "police
officers are often forced to make split-second judgments – in
circumstances that are tense, uncertain, and rapidly evolving – about
the amount of force that is necessary in a particular situation."
Graham, 490 U.S. 397.  The proper application of the reasonableness
standard requires careful consideration of the specific facts and
circumstances of each individual case, including "whether the suspect
poses an immediate threat to the safety of the officers or others, and
whether he is actively resisting arrest or attempting to evade arrest by
flight." Graham, 490 U.S. at 396.

While these are the most common considerations, they are not "a
magical on/off switch that triggers rigid preconditions" to determine
whether an officer's conduct constituted excessive force.  Scott v.
Harris, 550 U.S. 372, 127 S.Ct. 1769, 1777, 167 L.Ed.2d 686 (2007).
Consequently, courts consider other factors, such as the availability of

alternative methods of capturing or detaining the suspect in determining reasonableness.  See Chew v. Gates, 27 F.3d 1432, 1441 (9th Cir. 1994).  Courts may also consider the demeanor of the suspect, and whether the suspect was fighting with the police or was intoxicated or noncompliant.  See Davenport v. Causey, 521 F.3d 544, 551 (6th Cir. 2008) (collecting cases).  To these factors, the Ninth Circuit Court of Appeals has added further considerations, such as "the quantum of force used," as well as "the availability of alternative methods of capturing or subduing a suspect."  Davis v. City of Las Vegas, 478 F.3d 1048, 1055 (9th Cir. 2007); Chew v. Gates, 27 F.3d 1432, 1441 n. 5 (9th Cir. 1994).

Cases alleging use of excessive force in violation of the Fourth Amendment "nearly always require[ ] a jury to sift through disputed factual contentions, and to draw inferences therefrom," and, therefore "summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly."  Lolli v. County of Orange, 351 F.3d 410, 415-16 (9th Cir. 2003)(citing Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002)).

1. <u>Officer Compton</u>

Chavez alleges two claims of excessive use of force against Officer Compton.  First, he contends Compton threatened his life, "pistol whipped" him in the back of the head, and shoved his head into the passenger seat when Compton was attempting to stop him from driving away from the hotel in the stolen vehicle.  Secondly, he contends Officer Compton physically attacked him and punched him at the arrest scene after Chavez was in custody.

Chavez gave deposition testimony that he first saw Officer Compton at the hotel pointing a gun at his friends.  Chavez saw the gun and ran for the car.  Compton opened the car door as Chavez was putting the key into the ignition.  According to Chavez, Compton opened the car door and said, "Get the hell out.  I'm going to shoot you.  Get out or I'm going to shoot you."  Court Doc. 64-6 at 9 (Chavez Depo. at p. 31 ll. 21-22).  Chavez contends Compton was saying this as he was pushing Chavez's face down in the passenger side seat.  Chavez contends he did not see Compton's uniform and Compton never identified himself as a police officer.  He contends Compton "pistol-

whipped" him eight or nine times on the back of his head before he was

able to knock the gun out of Compton's hand and drive away. (Court

Doc. 64-6--Chavez Depo. 38:5, 30:23-25).

Chavez need not show significant injury (see Wilke v. Reyes, 5

F.3d 412, 416 (9th Cir. 1993) (holding a plaintiff may be entitled to

nominal damages for a Fourth Amendment violation based on excessive

use of force even though he did not suffer actual damages or significant

injury)), but the lack of injury to Chavez's head despite the alleged

eight or nine "pistol whippings," does not provide substantial evidence

in his favor. There is no indication in Chavez's medical records of any

abrasions or injuries to the back of Chavez's head. In addition, the

Court has viewed the videos taken from the car on which Chavez was

placed after his arrest. Those videos show the back of Chavez's shaved

head for nearly seven minutes – there is no apparent injury to the back

of Chavez's head.

The first Graham factor, whether the officers' actions were

objectively reasonable, generally raises an issue of fact. Here,

however, based on the evidence before the Court, the Court concludes

that a reasonable jury could not conclude that Compton used excessive force against Chavez.  See <u>Bugoni v. Coffman</u>, 2006 WL 3333078 (D. Ariz. 2006), vacated on other grounds, 321 Fed. Appx. 661 (9th Cir. 2009).  At the time of the stop of Chavez, Compton was aware an individual matching Chavez's description had robbed a Wal-Mart store on two separate occasions.  He also knew the car Chavez had gotten into was a stolen vehicle.  There was also a likelihood Chavez posed an "immediate threat to the safety" of the officer or others as Chavez was trying to drive away in a stolen vehicle.  Finally, Chavez was attempting to evade arrest by driving away from Compton.

Moreover, the Court has considered Chavez's admissions that he was high on the day of his arrest (Court Doc. 64-6:  Chavez Depo. 17-18) and he was trying to elude Compton because he was driving a stolen vehicle and he was going to be apprehended by a law enforcement officer.  (Court Doc. 64-6: Chavez Depo 32:25-33:1-3).

While it may have been possible for Compton to have used less force, that is not the relevant inquiry.  The officer need not use the least intrusive force available, but must use reasonable force based on

the circumstances presented.  Billington, 292 F.3d 1177, 1188-89 (9th Cir. 2002).  Reviewing all the facts in the light most favorable to Chavez, the Court finds that Chavez has failed to raise an issue of material fact with respect to his allegation that Compton used excessive force while at the motel.

The second allegation against Officer Compton is that he physically attacked and punched Chavez while Chavez was handcuffed and being held down on the front of a police vehicle by another officer. Compton testified by affidavit that he did not assault, strike, kick, or injure Chavez.  (Court Doc. 52-1: Compton Affidavit, ¶ 38).  The Court is required to view the facts in the light most favorable to Chavez, but must deny the summary judgment motion "only if there is a 'genuine' dispute as to those facts."  Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769 (2007).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Scott, 550 U.S. at 380.  As in the Scott case, the Court here is not bound to accept

Chavez's version of the facts, if those facts are "utterly discredited" by the videotape of the incident.  Scott, 550 U.S. at 380.

The Court has carefully reviewed the police vehicle videos (DVD's 3 and 4) of Chavez's arrest.  The video does not show an assault on Chavez by any police officer.  It does not show any indication from Chavez that he was assaulted.  It shows, with brief breaks in time, that he was placed against the hood of a police car until the medical ambulance crew arrived and placed Chavez in the ambulance for transport to the hospital.  No reasonable jury could believe after viewing these videos that Officer Compton assaulted Chavez at the arrest scene.  The Court will recommend Defendant Compton's Motion for Summary be granted.

2. <u>Officer Zorkakis</u>

Chavez alleges Defendant Zorkakis pulled out a large knife and cut his two t-shirts to reveal Chavez's tattoos after Chavez refused to identify himself.  Chavez contends these actions violated his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments.  (Court

Doc. 71, Chavez's response, p. 3).[4]

Zorkakis testified by affidavit that he did not cut Chavez's shirts and did not possess any knife while on duty on June 23, 2007. (Court Doc. 52-2: Zorkakis Affidavit, ¶¶ 16-19). No other affidavit was presented from any other officer at the scene regarding whether or not Officer Zorzakis was involved in the destruction of Chavez's shirts.

Zorzakis is correct there is no evidence which establishes him as the individual who cut Chavez's shirts. This act cannot be seen on the police DVDs so even if Chavez were allowed access to the DVDs they do not reveal who cut his shirts. Moreover, Chavez has no evidence that it was Zorzakis as Chavez cannot identify the officer who cut his shirts or Zorzakis. (Court Doc. 64-6: Chavez Depo. 59:12-13).

Regardless of who cut Chavez's shirts, Chavez's allegations fail to state a claim for relief. "In the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search

---

[4]The Eighth Amendment only applies to convicted prisoner. Bell v. Wolfish, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); Graham v. Connor, 490 U.S. 386, 395 n. 10, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

under that Amendment." United States v. Robinson, 414 U.S. 218, 235, 94 S.Ct. at 477 (1973). "[C]lothing or other belongings may be seized upon arrival of the accused at the place of detention and later subjected to laboratory analysis . . .." United States v. Edwards, 415 U.S. 800, 804, 94 S.Ct. 1234 (1974).

There is no explanation from Defendants why it was necessary to cut away Chavez's clothing at the scene of the arrest when his clothing could also have been seized at the hospital or at the jail.  Regardless, there is no Fourth Amendment constitutional violation here.  There is nothing to establish this search, in order to identify Chavez, was unreasonable and there is no evidence to establish it was Zorzakis who conducted the search.  As such, Chavez's Fourth Amendment claim fails as a matter of law.

F.  Fifth Amendment Right against Self-Incrimination

To the extent Chavez alleges the cutting away of his shirts somehow violated his Fifth Amendment right against self-incrimination, that claim also fails.  There is no basis upon which to bring a Fifth Amendment claim as the display of Chavez's tattoos was

non-testimonial.  See United States v. Dionisio, 410 U.S. 1, 5-6, 93 S.Ct. 764, 767, 35 L.Ed.2d 67 (1973); Schmerber v. California, 384 U.S. 757, 764, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908 (1966); Holt v. United States, 218 U.S. 245, 252-53, 31 S.Ct. 2, 6, 54 L.Ed. 1021 (1910)(the prohibition against self incrimination is a prohibition against the use of compulsion to extort communication, not an exclusion of one's body as evident when it may be material); United States v. Valenzuela, 722 F.2d 1431, 1433 (9th Cir. 1983).

## G.  Destruction of Property

To the extent Chavez raises a claim regarding the destruction of his shirts, that allegation fails to state a claim upon which relief may be granted.  In Hudson v. Palmer, 468 U.S. 517 (1984), the United States Supreme Court explained that a state official's unauthorized taking of property under color of state law does not violate the Constitution if the State provides an adequate remedy for the deprivation:

> [A]n unauthorized intentional deprivation of property by a
> state employee does not constitute a violation of the
> procedural requirements of the Due Process Clause of the
> Fourteenth Amendment if a meaningful post-deprivation

remedy for the loss is available.

Hudson, 468 U.S. at 533 (emphasis added); see also Zinermon v. Burch, 494 U.S. 113, 129-130 (1990); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  A state post-deprivation remedy may be adequate even though it does not provide relief identical to that available under § 1983.  See Hudson, 468 U.S. at 531.  In other words, unless the state deprives the plaintiff of the opportunity to be compensated for his lost property, the plaintiff has not been denied due process and has not, therefore, been deprived of his property without due process.  The Montana Tort Claims Act,  Mont. Code Ann. §§ 2-9-101, et seq., provides an adequate post-deprivation remedy.

In Zinermon, the United States Supreme Court created an exception to the post-deprivation remedy rule when:  (1) the deprivation of liberty was predictable; (2) the creation of a pre-deprivation process was not impossible; and (3) the deprivation was the result of an official's "abuse of his position" and therefore was not "random and unauthorized."  Honey v. Distelrath, 195 F.3d 531, 533 (9th Cir. 1999)(citing Zinermon, 494 U.S. 113).

This is not Chavez's claim.  The cutting of Chavez's shirts was not a predictable act.  Because the post-deprivation remedy rule applies and because the Montana Tort Claims Act would be an adequate state post-deprivation remedy, Chavez cannot state a claim for an intentional deprivation of property under the Due Process Clause to the United States Constitution.

H.  Denial of Medical Care

Chavez also alleges a number of denial of medical care claims. Chavez plead guilty on January 18, 2008.  (Court Doc. 52-5, p. 5). Accordingly, Chavez was a pretrial detainee until January 18, 2008.

The Eighth Amendment does not apply to pretrial detainees. Rather, a pretrial detainee's challenge to conditions of confinement are evaluated under the Due Process Clause of the Fourteenth Amendment.  Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001); Redman v. County of San Diego, 942 F.2d 1435, 1440 (9th Cir. 1991) (en banc), cert. denied, 502 U.S. 1074, 112 S.Ct. 972, 117 L.Ed.2d 137 (1991); and Lolli v. County of Orange, 351 F.3d 410, 418-19 (9th Cir. 2003).  As a pretrial detainee, Chavez is protected by the

Fourteenth Amendment's Due Process Clause, which establishes that "detainees have a right against jail conditions or restrictions that 'amount to punishment.'" Pierce v. County of Orange, 526 F.3d 1190, 1205 (9th Cir. 2008).  Because a pretrial detainee's rights under the Fourteenth Amendment are comparable to the rights of prisoners under the Eighth Amendment, the Ninth Circuit has applied Eighth Amendment medical care standards to claims brought by pretrial detainees.  See Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

The Eighth Amendment requires that prisoners receive adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 104 (1976); see also McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997).  To state an arguable section 1983 claim for failure to provide medical care, a prisoner must allege a defendant's "acts or omissions [were] sufficiently harmful to evidence a deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106; Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).

Deliberate indifference under the Eighth Amendment involves the

consideration of two elements:  "[1] the seriousness of the prisoner's medical need[;] and [2] the nature of the defendant's response to that need." McGuckin, 974 F.2d at 1059; see also Lolli v. County of Orange, 351 F.3d 410, 419 (9th Cir. 2003).  That is, a plaintiff must demonstrate "'objectively, sufficiently serious' harm and that the officials had a 'sufficiently culpable state of mind' in denying the proper medical care. Thus, there is both an objective and a subjective component to an actionable Eighth Amendment violation." Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002)(citing Wallis v. Baldwin, 70 F.3d 1074, 1076 (9th Cir. 1995)).

The objective component of deliberate indifference requires the showing of a serious medical need.  "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (9th Cir. 1992) (quoting Estelle, 429 U.S. at 104); see also Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

The subjective component of deliberate indifference considers the nature of the defendant's response to the serious medical need and

whether the defendant had a culpable mental state, which is "'deliberate indifference' to a substantial risk of serious harm." Frost, 152 F.3d at 1128 (quoting Farmer v. Brennan, 511 U.S. 825, 835 (1994)). "[T]he official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. "[T]he official's conduct must have been 'wanton,' which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official." Frost, 152 F.3d at 1128 (quoting Wilson v. Seiter, 501 U.S. 294, 302-303 (1991)). "This second prong – defendant's response to the need was deliberately indifferent – is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 citing McGuckin, 974 F.2d at 1060. "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Id.

1.  <u>Defendant Zorzakis</u>

Chavez's contends Officer Zorzakis was deliberately indifferent to his serious medical needs when he told hospital staff to "speed" Chavez through to discharge because he needed to be in a cell and not a hospital bed.  Chavez contends that as a result of this, he was discharged within 45 minutes of going to the hospital.

Chavez does not respond to Officer Zorzakis's motion for summary judgment on this claim.[5]  Officer Zorzakis testified he went to the hospital after Chavez was taken there by ambulance but he did not instruct anyone not to provide Chavez with proper medical care. Chavez was admitted into the hospital at 6:49 a.m. (Court Doc. 52-3, p. 34).  Zorzakis was cleared of his responsibilities to observe Chavez at approximately 7:21 a.m.  According to the medical records from St. Vincent's Hospital, Chavez was in the hospital far longer than 45 minutes.  He was not discharged until 9:40 a.m.  Finally, even if Zorzakis made such a statement, Chavez has not presented any evidence that he did not receive proper medical care at the hospital.

---

[5]Local rule 7.1(d) provides that a "failure to file a response brief may be deemed an admission that the motion is well taken."

This claim will be recommended for dismissal.

    2. <u>County Defendants</u>

Chavez was booked into the YCDF on the morning of June 23, 2007.  He filed his Complaint on February 12, 2008.  Accordingly, the Court will only consider Chavez's claims arising between April 23, 2007, and February 12, 2007.  Claims arising after that date could not have been exhausted at the time the Complaint was filed.

Chavez alleges he sat screaming in pain in a cell for three hours before being booked into the YCDF.  Thereafter, he pleaded with Nurse Kate Kydland, Physicians Assistant Tara Cooper, Doctor Sheckleton, Chuck Maxwell, and Dennis McCave to receive medical care.  He alleges it took more than four months to see Dr. Sheckleton.  He contends he was denied medical care for his pain (although he never specified the nature of this pain), seizures, "a cancerous growth" under his eye, hardened lymph nodes, and a brain disorder.  He claims that because his physical pain was left untreated he is now mentally ill.

Chavez alleges when he entered the detention facility he notified staff of his extreme pain and history of untreated seizure condition.  He

complains he was not allowed a wheelchair and was held in Class A for nine months.  He contends he suffered extreme physical pain but was only given Motrin.  His attempts to see a doctor were blocked.  He was not seen about his seizure condition until nine months had passed during which he suffered increasing pain and seizure-like attacks.

With regard to Sheriff Maxwell and Captain Dennis McCave, he contends he wrote kites (grievances) but they were ignored.  He argues it took a total of 10 months for Dr. Sheckleton to get his pain and seizure medication correct.  He notes that although Dr. Sheckleton claims Chavez's complaints were not consistent with a definite pattern of injury, he still prescribed him pain and seizure medications.

In analyzing Chavez's claims, the Court first notes that the medical records, Chavez's grievances, and Chavez's medical requests indicate that while Chavez mentioned a history of seizures, he did not complain he was having any such seizures until March 8, 2008, after the filing of this lawsuit.  Similarly, Chavez's complaints regarding a cancerous growth, hardened lymph nodes, and brain disorders did not arise until after the filing of this lawsuit.  As Chavez could not have

exhausted those claims prior to filing his lawsuit, those claims must be dismissed.  This leaves only Chavez's claims that Defendants ignored his pain and requests to see a physician.

a. <u>Serious Medical Need</u>

The first element to establish deliberate indifference under the Eighth Amendment requires a showing of a serious medical need. Chavez has not established a "serious medical need."  Both Dr. Sheckleton and the County's medical expert testified that Chavez did not present with a serious or life-threatening medical condition at any time.  While Chavez complains he "suffered extreme physical pain," he not once provides a detailed description of that pain.  While he implicitly attributes the pain to the car accident, he does not specify what injuries he received in the accident.  Chavez was diagnosed at St. Vincent's Hospital as suffering from blunt trauma but the CT scan and x-rays were all negative.  While Chavez understandably suffered some painful effects from the car accident, he was evaluated and treated both at the hospital and at YCDF.  Aside from his conclusory allegations of "extreme pain," he has not established that he suffered from a serious

medical need.

### b.  Deliberate Indifference

Even assuming a serious medical need, it has not been sufficiently established that Defendants were deliberately indifferent to Chavez's needs.  Chavez first alleges he screamed in pain for three hours after he arrived at the YCDF.  This allegation is contradicted by Chavez's sworn deposition testimony and the jail intake records.  In his deposition, Chavez testified that within an hour of arriving at the Detention Facility he was given a mattress and "laid on it and passed out from pain.  Three hours later, they came and woke me up.  I wasn't knocked out the whole time.  I was in and out of sleep, and I was in pain.  You know, that pain kept waking me up."  (Court Doc. 64-6, 125:16-19).  This testimony is fairly consistent with the jail records which indicate Chavez arrived at the jail at 10:02 a.m.  At 10:40 a.m. Chavez stated he was in severe pain, at 10:45 a.m. Chavez was banging on the door saying he needed a doctor.  He was given medication from a nurse at 11:04 a.m.  At 12:20 he was given a mattress.  He laid on the mattress between 12:15 p.m. and 1:24 p.m.  He was asleep on the mattress

between 1:24 p.m. and 3:15 p.m. when he was booked into the jail.

Most importantly, Chavez's allegations regarding the initial period he was at the jail fail because he does not attribute this lack of treatment to any of the named Defendants.  Chavez does not provide any testimony or evidence regarding the individual Defendants knowledge or participation in the booking procedure.

In light of Chavez's deposition testimony, the jail intake records, and the failure to identify Defendants' responsibility for the treatment Chavez received at booking, the Court cannot say Defendants were deliberately indifferent during the booking procedure.

Thereafter, Chavez did make some requests for medical care.  On June 24, 2007, a nurse checked on his complaints of back pain and Chavez complained of pain in his abdomen and back on June 29, 2007. But on June 30, 2007, he was prescribed 800 mg of Motrin three times a day.  This prescription of Motrin was given until September 23, 2007.

Chavez filed his first medical request on July 2, 2007 complaining of pain and requesting to see a doctor.  Nurse Kydland responded that he appeared to be moving around without problems.  (Court Doc. 64-1,

p. 22).  Chavez did not file another medical request until October 1, 2007, after his Motrin prescription was stopped.

Between September 23, 2007, (when the Motrin was stopped) and October 25, 2007, when he saw Dr. Sheckleton, Chavez had available to him over-the-counter pain medications.  He was given Tylenol.  After three months of filing no medical requests, Chavez filed medical requests October 1, 2007, and October 17, 2007, regarding his pain.  He was seen by Dr. Sheckleton on October 25, 2007.  Thereafter, Chavez was given a combination of different medications to alleviate his pain and anxiety.  As of April 18, 2008, when Chavez was received into the Montana State Prison, he indicated he had no mental health problems and no special needs now that he was receiving the proper medication. Chavez indicated on April 18, 2008, that he was "in tip-top shape right now."  (Court Doc. 64-6, p. 34 (Chavez Depo. at 130 l. 24 to 131 l. 4).

The record demonstrates that Defendants were attentive to Chavez's care.  When he complained of abdomen and lower back pain he was treated with prescription-strength Motrin.  While Chavez contends he needed different or stronger treatment, he produced no

evidence to establish such a claim.  Chavez may have disagreed with the treatment he received, but mere disagreements between a prisoner-patient and prison medical personnel over the need for or course of medical treatment does not establish deliberate indifference.  Franklin v. State of Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981); see also Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)(difference of medical opinions).

Chavez failed to establish he was suffering from a serious medical need or that Defendants were deliberately indifferent.  Accordingly, the County Defendants' Motion for Summary Judgment should be granted.

III.  CONCLUSION

Chavez's claims against Defendants are insufficient to survive summary judgment.  The Court further finds that Chavez has, as a matter of law, failed to produce sufficient evidence to prove his claims.  As such, the Court will certify that any appeal of this matter would not be taken in good faith.

Based on the foregoing, the Court enters the following:

ORDER

1.  Chavez's Motion for an Order to Compel Witness Affidavits (Court Doc. 82) is DENIED.

2.  Chavez's Motion to Compel the Production of Evidence (Court Doc. 83) is DENIED.

3.  Chavez's Second Motion for an Order Granting Special Custody of Discovery Materials (Court Doc. 84) is DENIED AS MOOT.

Further, the Court issues the following:

RECOMMENDATION

1.  Defendants Compton and Zorzakis's Motion for Summary Judgment (Court Doc. 50) should be GRANTED.

2.  Defendants Cooper, Kydland, Maxwell, McCave, and Sheckleton's Motion for Summary Judgment (Court Doc. 55) should be GRANTED.

3.  The Clerk of Court should be directed to enter judgment in favor of Defendants and close this case.

4.  The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(3)(1) of the Federal

Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith. Chavez failed to produce sufficient evidence to support his claims and as such no reasonable person could suppose that an appeal would have merit.

### NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Chavez may serve and file written objections to this Findings and Recommendation within ten (10) business days of the date entered as indicated on the Notice of Electronic Filing. Any such filing should be captioned "Objections to Magistrate Judge's Findings and Recommendation."

A district judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendation. Failure to timely file written objections may bar a de novo determination by the district judge and may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

This is not an order that is immediately appealable to the Ninth

Circuit Court of Appeals.  Any notice of appeal pursuant to

Fed.R.Civ.P. 4(a)(1), should not be filed until entry of the District

Court's final judgment.

DATED this 2nd day of November, 2009.


/s/ Carolyn S. Ostby
Carolyn S. Ostby
United States Magistrate Judge